SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ONONDAGA

_____

ICM Controls Corp.,
7313 William Barry Boulevard
Syracuse, New York 13212,

|  |  |
|---|---|
| Plaintiff, | **VERIFIED COMPLAINT** |
| v. | Index No. |

AquaCal AutoPilot, Inc.
2737 24th Street North
St. Petersburg Florida 33713,

Defendant.

_____

Plaintiff ICM Controls, Corp. ("Plaintiff" or "ICM"), by and through counsel, Lippes

Mathias LLP, for its causes of action against Defendant AquaCal AutoPilot, Inc. ("Defendant" or

"AquaCal"), alleges as follows:

## PARTIES

1.      Plaintiff is a Delaware corporation with a principal place of business at 7313

William Barry Boulevard, Syracuse, New York 13212. ICM manufacturers electronic controls

for use in a wide array of various industries.

2.      Defendant is a Florida corporation with a principal place of business at 2737 24th

Street North, St. Petersburg Florida 33713. Upon information and belief, AquaCal manufactures

products that are used in swimming pools, specifically, heating and cooling pumps and other

climate controls and technologies.

3.      This action is brought by ICM against AquaCal for failure to pay for custom OEM

products that ICM manufactured for AquaCal pursuant to several purchase orders. The purchase

orders submitted by AquaCal served as the parties' agreed upon "contracts."

1

4.      Between December 2019 and February 2022, AquaCal submitted several purchase orders for electronic "capacitive touch control" products and heat pump control boards that were manufactured and designed by ICM specifically for AquaCal.

5.      By submitting the purchase orders, AquaCal agreed to ICM's terms and conditions ("Terms and Conditions") and cancellation policy ("Cancellation Policy").

6.      ICM fully performed pursuant to the purchase orders, but AquaCal attempted to cancel the purchase orders, an act prohibited under ICM's Cancellation policy.

7.      Furthermore, AquaCal has refused delivery of several thousand products designed and manufactured specifically for AquaCal which have no alternative market for sale.

8.      AquaCal has failed to remit payment for the purchase orders, damaging Plaintiff in an amount to be proven at trial but in any event, in an amount, upon information and belief, no less than $4,879,025.19 (the "Outstanding Amount").

9.      ICM seeks damages for Breach of Contract against AquaCal as a result of their failure to remit payment and accept delivery of the custom OEM products produced specifically for them.

**JURISDICITION**

10.     This Court has jurisdiction over this action pursuant to CPLR § 301.

**RELEVANT BACKGROUND**

11.     In 2014, ICM began providing "capacitive touch control" products ("Capacitive Touch Components") to AquaCal for use in AquaCal's products. A Capacitive Touch Component is an ICM created interface system that allows for control of a device by direct interaction by human fingers.

2

12.     AquaCal used these Capacitive Touch Components in turn, for use in its own products, specifically, heating and other pumps designed for swimming pools.

13.     From 2014 to 2018, AquaCal submitted numerous purchase orders for Capacitive Touch Components, which ICM fulfilled. During this time, the parties were in continuous communication regarding adjustments to specifications of products and orders needed by AquaCal.

14.     The Capacitive Touch Components during this timeframe were designed by ICM and were custom-built for AquaCal's specific needs.

15.     Between 2014 and 2018, AquaCal primarily ordered products that were indexed BA7800-LF, BC7822, and BB7810-LF (the "Old Products").

16.     The Old Products were electronics that worked in tandem with each other, one of which would serve as the electronic interface utilizing Capacitive Touch Components, and the other which would process commands from the interface, directly controlling a swimming pool's pump, mechanical systems, and temperature regulators.

17.     In late 2018, ICM discovered that AquaCal had copied the ICM patented and developed designs for the Old Products and provided said designs to a third-party manufacturer.

18.     The third-party, named, upon information and belief, Cybex, then manufactured products nearly identical to the Old Products based on the ICM-developed design provided to them by AquaCal.

19.     This action by AquaCal constituted an infringement on the patents held by ICM for the Old Products.

20.     Upon discovering this information, ICM informed AquaCal via email that is actions were infringing on ICM's patents.

3

21.     After informing AquaCal of this patent infringement, orders from AquCal to ICM gradually receded to near-zero.

22.     Upon information and belief, as the parties business relationship diminished, AquaCal continued to purchase the products manufactured by Cybex that were based on ICM's designs.

23.     By the summer of 2019, the business relationship between the two parties had dwindled close to non-existence.

24.     In October 2019, the two sides engaged in discussions to reopen the business relationship between the parties.

25.     As a part of these negotiations, AquaCal's engineering team visited ICM's facilities in November 2019, and ICM's team visited AquaCal's facilities in December 2019.

26.     ICM designed two new products for AquaCal, indexed as BG4200 and BG4202 (collectively the "New Products") which closely resembled Old Products BC7822, and BB7810.

27.     The New Products were designed by ICM specifically for AquaCal, and had no utility except use by and sale to AquaCal.

28.     The New Products, at the insistence of AquaCal, included components that, at the time, were scarce and bordering on obsolete.

29.     ICM notified AquaCal of these components near obsolescence and scarcity, and repeatedly notified AquaCal that these components would only increase in scarcity, and that redesigning the products to include newer, more readily available components was advisable to avoid supply issues. ICM advised AquaCal of this for multiple years.

30.     Despite ICM's repeated attempts, AquaCal refused to consider a redesign, and insisted that the older, scarcer components be utilized within the New Products.

31.     When the COVID-19 pandemic occurred, these components, which were already scarce beforehand, became nearly unobtainable.

32.     Despite knowledge that components for the New Products were scarce, AquaCal continued to place purchase orders for the New Products.

33.     ICM continued to produce the New Products and fill AquaCal's orders, by purchasing the necessary older components on the secondary market. However, eventually the components became so scarce that ICM could not produce the New Products with any consistency.

34.     As a solution, ICM agreed to provide AquaCal with products BC7822 and BB7810-LF that had been previously supplied, since the New Products were unable to be built due to component scarcity.

35.     As a result, AquaCal submitted several purchase orders for Old Products in the event that the New Products were unable to be produced due to the scarcity of their components.

## THE PURCHASE ORDERS

36.     Between December 2019 and February 2022, AquaCal submitted purchase orders (collectively the "Purchase Orders") consisting of both New and Old Products.

37.     All the Purchase Orders were made via email to ICM's orders inbox.

38.     ICM's Terms and Conditions and Cancellation Policy were both located on ICM's website at the time when the Purchase Orders were submitted, and often supplied with the order acknowledgement.  A true and accurate copy of ICM's Terms and Conditions of Sale is attached hereto as **Exhibit A**. A true and accurate copy of ICM's Cancellation Policy is attached hereto as **Exhibit B**.

5

Case 5:23-cv-01328-DNH-TWD    Document 2    Filed 10/27/23    Page 6 of 27

39.     By submitting the Purchase Orders, AquaCal agreed to ICM's Terms and Conditions of Sale and Cancellation Policy.

40.     ICM's Cancellation Policy specifies that "[a]ll custom OEM parts are Non-Cancellable Nonrefundable." Ex. B pg. 2.

41.     ICM's Terms and Conditions includes the following provision: "[i]n the event ICM . . . commences a legal action or suit to collect the purchase price or any part thereof, Customer shall, in addition to the full purchase price including interest, be liable for all costs and expenses of such legal action or suit (including reasonable attorney's fees)." Ex. A pg. 2.

42.     On December 20, 2019, AquaCal submitted a purchase order numbered P000002248 ("PO 2248") for 10,000 BC7822 products at an initial total cost of $266,000.00. Supplementary orders in connection with PO 2248 ordered an additional 2,962 BC7822 products to be delivered to AquaCal.

43.     Out of the 12,962 products produced by ICM in connection with PO 2248, AquaCal refused delivered of 1,710 total products.

44.     These products, as is the case with all the refused products referenced hereinafter, remain in the possession of ICM and have no utility to any other potential buyer since they are custom products produced specifically for AquaCal.

45.     These refused products correspond to a total outstanding balance of $67,988.00 owed by AquaCal to ICM in connection to PO 2248.

46.     On August 7, 2020, AquaCal submitted a purchase order numbered P000003842 ("PO 3842") for 10,000 BB7810 products. In a subsequent sales order acknowledgement, ICM acknowledged a sale of 4,483 of these products to AquaCal.

6

47.     There was a supplementary order connected to PO 3842 submitted by AquaCal on January 18, 2022, for an additional BB7810 products. Sales order acknowledgement by ICM recognized a sale of 11,000 BB7810 products ordered in connection to this supplementary order. Additionally, a subsequent supplementary order by AquaCal purchased 17 additional products acknowledged in an ICM sales order acknowledgement.

48.     Upon information and belief, out of the 15,000 BB7810 products produced by ICM in connection with PO 3842, AquaCal has refused delivery of 4,801 total products. Upon information and belief, these refused products equate to a total outstanding balance of $174,197.76 owed by AquaCal to ICM in connection to PO 3842.

49.     On November 23, 2021, AquaCal submitted a purchase order numbered P000006804 ("PO 6804") for twenty-four thousand (24,000) BG4200 products at a total cost of $1,248,200.00.

50.     Out of the 24,000 BG4200 products produced by ICM in connection with PO 6804, AquaCal has refused delivery of 15,319 total products.

51.     These refused products correspond to a total outstanding balance of $874,561.71 owed by AquaCal to ICM in connection to PO 6804.

52.     On November 29, 2021, AquaCal submitted a purchase order numbered P000007172 ("PO 7172") ordering 24,000 BG 4202 products at an initial total cost of $1,608,960.00.

53.     As of January 1, 2022, the price of a BG4202 product increased from $67.04 to $72.36. AquaCal was notified of and assented to the price change.

54.     Out of the 24,000 BG4202 products produced by ICM in connection with PO 7172, AquaCal refused delivered of 13,802 total products.

7

55. These refused products correspond to a total outstanding balance of $998,712.72 owed by AquaCal to ICM in connection to PO 7172.

56. On February 1, 2022, AquaCal submitted a purchase order numbered P000007703 ("PO 7703") for 12,000 BG4202 products and 12,000 BG4200 products at an initial total cost of $1,204,800.00.

57. As of January 1, 2022, the price of a BG4202 products had increased from $67.04 to $72.36 and the price of a BG4200 product had increased from $46.00 to $57.08. AquaCal was notified of and assented to the price changes.

58. AquaCal refused delivery of all 24,000 total New Products produced by ICM in connection with PO 7703.

59. These refused products correspond to a total outstanding balance of $1,707,720.00 owed by AquaCal to ICM in connection to PO 7703.

60. On February 1, 2022, AquaCal submitted a purchase order numbered P000007702 ("PO 7703") for 3,000 BB7810 products and 3,000 BC7822 products at an initial total cost of $196,260.00.

61. As of December 1, 2022, the price of a BB7810 product had been changed from $35.39 to $40.12 and the price of a BB7822 product had been increased from $30.03 to $42.37. AquaCal was notified of and assented to the price changes.

62. AquaCal refused delivery of all 6,000 total Old Products produced by ICM in connection with PO 7702.

63. These refused products correspond to a total outstanding balance of $247,470.00 owed by AquaCal to ICM in connection to PO 7702.

64.     On January 18, 2022, AquaCal submitted a purchase order numbered P000007591 ("PO 7591") for 5,000 BC7822 products at an initial total cost of $150,150.00.

65.     As of December 1, 2022, the price of a BC7822 product had been increased from $30.03 to $42.37. This price change was only applicable for the final 1,500 BC7822 products of the 5,000 total ordered in PO 7591. AquaCal was notified of and assented to the price change.

66.      AquaCal, after placing the order, refused delivery of all 5,000 products produced by ICM in connection with PO 7591.

67.     These refused products correspond to a total outstanding balance of $198,935.00 owed by AquaCal to ICM in connection to PO 7591.

68.     On February 28, 2022, AquaCal submitted a purchase order numbered P000007903 ("PO 7903") for 6,000 BB7810 products for an initial total cost of $217,440.00.

69.     As of December 1, 2022, the price of a BB7810 products changed from $36.24 to $40.12. The price change was only applicable for the final 2,000 BB7810 products of the 6,000 total ordered in PO 7903. AquaCal was notified of and assented to the price change.

70.      2,000 of the 6,000 products ordered in PO 7903 were shipped, but AquaCal refused delivery of 4,000 of the products produced in connection with PO 7903.

71.     These refused products correspond to a total outstanding balance of $152,720.00 owed by AquaCal to ICM in connection to PO 7903.

72.     On February 23, 2022, AquaCal submitted a purchase order numbered P000007890 ("PO 7890") for 4,000 BG4202 products and 4,000 BG4200 products at an initial total cost of $368,00.00.

73.     As of January 1, 2022, the price of a BG4202 products had increased from $67.04 to $72.36 and the price of a BG4200 product had increased from $46.00 to $57.08. AquaCal was notified of and assented to the price changes.

74.     AquaCal refused delivery of all 8,000 total New Products produced by ICM in connection with PO 7890.

75.     These refused products correspond to a total outstanding balance of $456,720.00 owed by AquaCal to ICM in connection to PO 7890.

76.     Upon information and belief, the total outstanding amount owed by AquaCal to ICM for the Purchase Orders is $4,879,025.19 (the "Outstanding Amount").

77.     Because of supply chain shortages, ICM provided AquaCal another ICM product, BB7810-LF, which was one of the Old Products that AquaCal had previously been supplied by ICM. Eventually, however, supply chain issues lead to long lead times on that product as well.

78.     In December of 2021, ICM informed AquaCal, via email, that that it had run out of the necessary components to build the New Products.

79.     Despite this, AquaCal continued to submit Purchase Orders for the New Products.

80.     Throughout 2022, ICM and AquaCal were in constant communication regarding the material and component shortages.

81.     On February 10, 2023, AquaCal sent an email ("February 10, 2023 Email") to ICM of "official notice of our cancellation of all open purchase orders previously submitted by Aqua Cal AutoPilot to [ICM]." A true and accurate copy of the February 10, 2023 Email is attached hereto as Exhibit C.

82.     The Purchase Orders however, were non-cancellable pursuant to ICM's Cancellation Policy that AquaCal had agreed to by submitting the Purchase Orders.

10

83.     As a result, the Purchase Orders were not cancelled, and remained due and owing.

84.     AquCal has, however, refused to remit payment for the Purchase Orders.

85.     On May 4, 2023, ICM, through counsel sent a letter ("May 4th Letter") to AquaCal demanding payment of amounts owed pursuant to the Purchase Orders.

86.     AquaCal was not responsive to the May 4th Letter and has since failed to remit payment to ICM for the amount owed.

87.     On June 6, 2023, AquaCal submitted another purchase order ("June 6, 2023 Order") for six-thousand (6,000) total New Products.

88.     On June 14, 2023, ICM, through counsel, sent another letter ("June 14th Letter"), stating that it was open to considering the June 6, 2023 Order contingent upon, among other things, partial payment of the Outstanding Amount from the Purchase Orders. The June 14th Letter again reiterated that ICM was legally entitled to the entire amount owed pursuant to the Purchase Orders.

89.     AquaCal did not respond to ICM's June 14th Letter. The June 6, 2023 Order was ultimately fulfilled without AquaCal fulfilling payment for the Outstanding Amount, or ICM waiving its right to payment of the Outstanding Amount.

### FIRST CAUSE OF ACTION
**Breach of Contract**

90.     ICM realleges and restates paragraphs 1 through 89 as if fully set forth herein.

91.     ICM and AquaCal entered into the contracts pursuant to Purchase Orders PO 2248, PO 3842, PO 6804, PO 7172, PO 7703, PO 7591, PO 7903, PO 7890.

92.     By submitting the Purchase Orders to ICM, AquaCal agreed to ICM's Terms and Conditions of Sale and Cancellation Policy. *See* Ex. A, B.

Case 5:23-cv-01328-DNH-TWD    Document 2    Filed 10/27/23    Page 12 of 27

93.    The terms of the contracts made pursuant to the Purchase Orders included terms that "[a]ll custom OEM parts are Non-Cancellable Nonrefundable." Ex. B pg. 2.

94.    ICM fully performed under the contracts entered pursuant to the Purchase Orders.

95.    On February 10, 2023, AquaCal attempted to cancel the Purchase Orders via email. Ex. C.

96.    As of the filing of this Complaint, AquaCal has still not remitted payment to ICM for the amounts owed pursuant to the Purchase Orders.

97.    AquaCal has also refused delivery of several thousand custom products produced pursuant to the Purchase Orders, which have no utility other than use by AquaCal.

98.    Despite the shortages in components necessary to produce both New and Old Products, the refused products are ready to be shipped.

99.    Upon information and belief, as a result of AquaCal's breach with regards to the Purchase Orders, ICM has been damaged in an amount totaling no less than $4,879,025.19.

WHEREFORE, ICM prays that this Court award judgment against Defendant AquaCal as follows:

1.    Judgment in favor of ICM on its First Cause of Action for Breach of Contract and awarding ICM no less than $4,879,025.19 for breach of the Purchase Orders, plus costs and interest.

2.    Prejudgment interest from the date of breach and the costs of this lawsuit, including reasonable attorneys' fees, as may be just and proper under law or equity, and;

3.    Any such other and further relief as this Court deems just and proper.

Case 5:23-cv-01328-DNH-TWD    Document 2    Filed 10/27/23    Page 13 of 27

DATED:    Buffalo, New York
          August 28, 2023

**Lippes Mathias LLP**

Brian C. Mahoney, Esq.
Thomas R. Southard, Esq.
*Attorneys for Plaintiff*
*ICM Controls Corp.*
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
Telephone:  716-853-5100
Email:  bmahoney@lippes.com
Email:  tsouthard@lippes.com

13

**VERIFICATION**

STATE OF NEW YORK              )
COUNTY OF ONANDAGA            ) SS:

Joseph Bonacci, being first duly sworn according to law, deposes and says that he is the Chief Executive Officer of Plaintiff ICM Controls Corp., that he has read the foregoing Verified Complaint and that the statements contained therein are true and correct, to the best of his knowledge, information, and belief. So far as on information and belief, he further states that he believes the information to be true.

_____
Joseph Bonacci

Sworn to me this 28 day of August 2023.


_____
Notary Public



14

INDEX NO. 009130/2023

Case 5:23-cv-01328-DNH-TWD    Document 2    Filed 10/27/23    Page 15 of 27

RECEIVED NYSCEF: 08/28/2023

# Ex. A

FILED: ONONDAGA COUNTY CLERK 08/28/2023 12:42 PM
NYSCEF DOC. NO: 2

ORDER STATUS

# Terms & Conditions

**HOME** . TERMS & CONDITIONS

---

## ICM CONTROLS CORP.

## TERMS AND CONDITIONS OF SALE

### GENERAL

1. The following terms and conditions apply to all sales of goods and services (collectively, "Products") by ICM Controls Corp. ("ICM", "we", "us" or "our"), to you (the "Customer"), and constitutes the final, complete and exclusive agreement ("Agreement") between you and ICM relating to the subject matter hereof and supersedes all prior or contemporaneous proposals, understandings, representations, warranties, promises and other communications, whether oral or written, relating to such subject matter (including, without limitation, any "Terms and Conditions of Purchase" published by Customer), unless otherwise specifically agreed to in a writing signed by ICM's authorized representative. Any term or condition in any order, confirmation, or other document furnished by Customer at any time, which is in any way inconsistent with or in addition to the terms and conditions set forth herein, is hereby expressly rejected, and ICM's acceptance of any order of Customer is expressly made in reliance of Customer's assent to all terms and conditions hereof. Customer's acceptance of delivery of any Products constitutes Customer's acceptance of these terms and conditions.

### PRICE

2. The prices applicable to the Products shall be as quoted by ICM to Customer. Unless otherwise specified, prices quoted for Products are in US Dollars. Stenographic and clerical errors are subject to correction.  A quotation is not a contractual offer and any order resulting from a quotation is subject to approval and acceptance by ICM.   Prices listed or quoted do not include any present or future sales, use, excise or similar taxes, duties or other governmental charges,

Case 5:23-cv-01328-DNH-TWD    Document 3    Filed 10/23/23    Page 17 of 27
Terms & Conditions of Sale 8/1/23, 12:07 PM

which will be added where applicable and paid for by Customer, unless you provide us with a tax exemption certificate acceptable to the appropriate taxing authorities and presented at or before the time of purchase. No sales tax refunds will be given at any time for any reason. Any taxes paid by ICM on Customer's behalf shall be reimbursed by Customer upon demand.

## PURCHASE ORDER PROCESS

3. Customer shall place orders for the Products to be purchased hereunder by submitting one or more purchase orders to ICM. Each such purchase order is intended for convenience only and shall state the descriptions and quantities of Products being ordered and the requested shipments dates for such Products. In no event shall any terms and conditions set forth on a purchase order submitted by Customer other than the terms and conditions set forth herein, including, without limitation, any preprinted terms and conditions of Customer, be binding on ICM. In addition, no purchase order shall be binding on ICM until ICM has accepted such purchase order by written acknowledgement or by shipment of the Products applicable to such purchase order. Orders for the purchase of Products when made by the Customer shall be considered irrevocable for such Customer following acceptance by ICM.

## PAYMENT TERMS

4. Unless otherwise agreed to by ICM in writing, payment terms shall be net thirty (30) days from the date of invoice. If shipments are delayed by Customer, invoices may be rendered on the date(s) ICM is prepared to make shipment(s). Any Product held as a result of Customer's inability or refusal to accept delivery is at the risk and expense of Customer. Interest at the rate of one and one-half percent (1 1/2%) per month (not to exceed the maximum interest allowable by law) shall be paid on the unpaid balance of any invoice not paid by Customer within thirty (30) days of the due date thereof. Such interest shall be in addition to the purchase price hereunder. In the event ICM engages a collection agency or commences a legal action or suit to collect the purchase price or any part thereof, Customer shall, in addition to the full purchase price including interest, be liable for all costs and expenses of such legal action or suit (including reasonable attorney's fees).

ICM further reserves the right to require full prepayment for Products (including all costs associated with shipping and freight) from any customer whose account is overdue for a period of more than 45 days or who has an unsatisfactory credit or payment record. ICM may also refuse to sell to any person until overdue accounts are paid in full.

## SHIPPING POINT AND TRANSPORTATION

5. Shipment/delivery dates are approximate and are determined from the date of ICM's acceptance of an order. All Products will be shipped EXW ICM's point of shipment. Title and risk of loss shall pass to Customer upon delivery of Product(s) by ICM to the carrier for shipment to the Customer, notwithstanding any prepayment of shipping charges by ICM, if so required by the carrier. All

Case 5:23-cv-01328-DNH-TWD    Document 1-10    Filed 10/30/23    Page 18 of 27

shipment costs shall be paid by Customer, and if prepaid by ICM, the amount thereof shall be reimbursed to ICM.

## DELIVERY

6. ICM will make every effort to deliver the Products hereunder in accordance with the requested delivery date, provided that ICM shall not be liable for any delay in delivery due to causes beyond our reasonable control, including, but not limited to, any acts of God, acts of Customer, acts of the government, strikes, war, pandemics or epidemics, delays of carriers, or inability to obtain necessary raw materials, components, labor, fuel or supplies or other circumstances beyond the reasonable control of ICM. ICM shall not be liable for any damages or penalties whatsoever whether direct or indirect, special, incidental or consequential, resulting from our failure or the failure of our suppliers to perform or delay in performing unless otherwise agreed in writing by an authorized officer. Customer agrees that any delay in delivery shall not affect the validity of any orders or these terms and conditions. ICM reserves the right to deliver the Products in installments unless expressly prohibited in the applicable purchase order. Installment deliveries will be invoiced by ICM at time of shipment unless otherwise agreed in writing by ICM. Delay in any installment delivery shall not relieve Customer of its obligation to accept all remaining installment deliveries pursuant to a purchase order.

## CHANGES TO ORDERS

7. Unless otherwise agreed to by ICM in writing, changes in materials, supplies, labor and/or changes made at the request of Customer and accepted in writing by ICM shall be at the expense of Customer. Changes or alterations made by Customer or made by ICM (over its recommendation against the same) shall be at Customer's sole risk and responsibility. ICM reserves the right to make changes to the design and composition of its Products which in its judgment do not materially change the nature or quality of the Products.

## CANCELLATION OF ORDERS

8. Due to the specialized nature of the Products, orders may be cancelled only with our written consent and upon payment of reasonable cancellation charges, including ICM's actual out of pocket costs, overhead and anticipated profit (as determined by us). Partial cancellation of an order may result in adjustment of prices for the balance of the order.

## REJECTION

9. Customer's right to reject any Products supplied hereunder is conditioned upon Customer giving ICM a written notice of rejection setting forth the basis thereof within ten (10) days after delivery of the Products to Customer. Failure to give such notice within such time constitutes acceptance

8/7/23, 12:07 PM    Case 5:23-cv-01328-DNH-TWD    DocumentterTis Conditions Filed 08ale/23    Page 19 of 27

of such Products. Products may be returned only when authorized by us in writing, and then only on such terms as ICM may specify.  All returned Products shall be returned with shipping prepaid.

**Limited Warranties; Disclaimers**

10.  (a) ICM represents and warrants that the Products delivered by ICM to Customer shall: (i) conform to agreed-upon specifications for the Product(s), to the extent any specifications were made part of an order; and (ii) be free from faulty workmanship and defective materials. The foregoing warranties shall be limited to a one (1) year period commencing on the date of shipment of the applicable Product(s) or following notice to the Customer that the Product(s) is/are ready for shipment (the "Warranty Period") provided (i) the Products have been properly cared for and used in accordance with ICM's instructions, if any, and (ii) Customer promptly notifies ICM in writing of any warranty claim during the Warranty Period. The warranties provided by ICM in this Section 10(a) are the only warranties provided by ICM with respect to the Product(s) sold hereunder, and may be modified or amended only by a written instrument signed by ICM. Customer's remedies and ICM's aggregate liability with respect to the warranties provided by ICM in this Section 10(a) are set forth in and limited by this Section 10 and Section 11 below.

(b)  In the event any Product fails to meet the warranties in Section 10(a) above during the Warranty Period, ICM's sole obligation, in ICM's sole discretion, shall be to either repair or replace the non-conforming Product.

(c) ICM shall not be liable for any repairs or other claim if alterations have been made to the Products by the Customer or others without ICM's prior written consent. Components and accessories furnished by third parties are warranted only to the extent of the original manufacturer's warranty to ICM and then only to the extent that such original manufacturer's warranty is assignable by ICM to Customer.

(d) Notwithstanding anything herein to the contrary, ICM's warranties hereunder shall be considered void and shall not cover damages/defects to Products caused by: (i) normal wear and tear; (ii) Customer's negligence, abuse, accident, improper storage, user maintenance of the Products; changes to the Products carried out by the Customer without ICM's prior written approval; (iii) the use of inadequate or unauthorized accessories on the Products; (iv) the use of the Products for purposes other than their intended use; (v) electrostatic discharges, electrical surges, improper electrical connections; or (vi) repairs to, alteration of, or work done on the Products without ICM's prior written authorization.

(e) Prior to return of any Product to ICM, or any part or component of  such Product alleged to be defective, Customer shall first obtain a Repair Authorization Number from ICM staff who evaluated the problem. The Repair Authorization Number must be included on all shipping documents. Any Products, or parts or components of such Products, sent to ICM without an assigned Repair Authorization Number will be rejected.

Case 5:23-cv-01328-DNH-TWD    Document 2-1    Filed 10/30/23    Page 20 of 27

(f) All transport charges to ship any Products to be repaired or replaced (including any applicable import duties claimed by governmental authorities as well as clearance fees) and the relevant return freights shall be the sole responsibility of the Customer.

(g) THE EXPRESS WARRANTIES OF ICM STATED IN SECTION 10(a) ABOVE ARE IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NON–INFRINGEMENT OF THIRD PARTY RIGHTS WITH RESPECT TO THE PRODUCTS. ICM'S WARRANTY OBLIGATIONS AND CUSTOMER'S REMEDIES ARE SOLELY AND EXCLUSIVELY AS STATED IN THIS SECTION 10.

## Limitation of Liability

11. Notwithstanding anything to the contrary contained in this Agreement, ICM's aggregate liability in connection with the sale or use of Product(s) hereunder, regardless of the form of action giving rise to such liability (whether in contract, tort or otherwise), shall not exceed the aggregate purchase price for Products paid by Customer to ICM pursuant to an applicable order. ICM shall not be liable for any extraordinary, exemplary, special, indirect, consequential or incidental damages of any kind, including without limitation, lost profits, even if ICM has been advised of the possibility of such damages.  Except as provided in Section 10(a) above, and subject to the limitations set forth in Sections 10 and 11 hereof, ICM shall not be liable for any claims of third parties relating to any use of the Products, and Customer will defend ICM and hold ICM harmless against all losses, liabilities, damages, claims and expenses, including, reasonable attorneys' fees arising out of or in connection with the use or sale of Products by Customer or Customer's employees, agents, customers, or contractors.   THE FOREGOING STATES THE ENTIRE LIABILITY OF ICM WITH REGARD TO THIS AGREEMENT AND ICM'S SALE OF PRODUCT(S) HEREUNDER.  THE LIMITATIONS CONTAINED IN SECTIONS 10 AND 11 ARE A FUNDAMENTAL PART OF THE BASIS OF ICM'S BARGAIN HEREUNDER, AND ICM WOULD NOT ENTER INTO THIS AGREEMENT ABSENT SUCH LIMITATIONS.

## Retained Security Interest

12. Until such time as the entire purchase price of the Products have been paid, Customer hereby grants to ICM a first priority purchase money security interest in the Products supplied pursuant to the terms hereof. The rights and remedies of ICM, as a secured party with respect to the Products shall be governed by the Uniform Commercial Code, or equivalent statute(s) of the State in which the Products are located. Customer authorizes ICM to execute and record on behalf of Customer such financing statements and other instruments as ICM may deem necessary to perfect or protect its security interest in the Products.

## Notices

FILED: ONONDAGA COUNTY CLERK 08/28/2023 12:42 PM INDEX NO. 009130/2023
NYSCEF DOC. NO. 2 RECEIVED NYSCEF: 08/28/2023

13. Notices may be delivered by overnight courier or fax, with proof of delivery, or by United States mail, registered or certified mail, with postage prepaid, in each case addressed to the party being notified at such party's address referred to on the face of this Agreement, or at such other address as such party shall have notified the other party in writing.

### Not Transferable

14. This Agreement is not transferable or assignable by Customer either directly or by operation of law without the prior written consent of ICM.

### Headings

15. Paragraph headings are for convenience only and shall not be construed to define or limit the operative provisions of this Agreement.

### Amendments

16. No amendment, change to or modification of this Agreement, or any schedules or attachments hereto, shall be valid unless the same shall be in writing and signed by the party or parties to be charged therewith.

### Applicable Law

17. The rights and duties of the parties shall be governed by the laws of the State of New York. The federal and state courts located within Onondaga County, New York shall have exclusive jurisdiction to determine any and all actions and proceedings relating to or arising from this Agreement and the sale of Product(s) hereunder and each party hereby irrevocably consents to the personal and subject matter jurisdiction of such courts with respect thereto.

### SEVERABILITY

18. In the event any provision or provisions herein, or parts thereof, shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired and shall remain in full force and effect.

## Find a distributor

**Find a distributor nearby entering your location, to get a quote or more information**

8/1/23, 12:07 PM    Case 5:23-cv-01328-DNH-TWD    Document 1-2    Terms & Conditions Filed 08/28/23    of Sale | ICM Controls    Page 22 of 27

about specfic products or services

ENTER YOUR ADDRESS

Find a distributor →

COPYRIGHT © 2021 – ICM CONTROLS          MADE IN USA



# Ex. B

8/10/23, 2:59 PM    Case 5:23-cv-01328-DNH-TWD    Document 2    Cancellation Policy - ICM Controls    Filed 10/16/23    Page 24 of 27

# Cancellation Policy

**HOME** . CANCELLATION POLICY

## ICM CONTROLS ORDER CANCELLATION POLICIES

All orders are processed and acknowledged and sent for shipment as soon as they are placed. During this process we incur irreversible fees. Therefore, while we understand that orders might need to be changed sometimes, we are unable to do it free of charge after a certain point. ICM will strictly adhere to the following cancellation policy:

## STANDARD AFTERMARKET ITEMS

### New Orders Cancellation

- If you cancel your order within 72 hours of order placement and BEFORE it has shipped, you can cancel your order at no cancellation cost a credit is issued.

- If you cancel your order AFTER 72 hours of order placement and BEFORE it has shipped, you can cancel your order at 35% cancellation fees.

- If you cancel your order AFTER it has shipped, please follow our Return Policies & Procedures. The cancellation will have to be treated as a Return with all applicable fees.

- Orders which are REFUSED AT DELIVERY will be assessed all of the applicable fees listed above – including restocking, cancellation and other applicable fees.

### Backorder/Late Shipment Cancellation

8/10/23, 2:59 PM
Case 5.23-cv-01328-DNH-TWD    Document 2    Filed 10/30/23    Page 25 of 27
Cancellation Policy – ICM Controls

- If your order/or remaining backordered item(s) is below $500 *and* we are late by our promised ship date, you can cancel your order with customer service with no additional cost.

- If your order/or remaining backordered item(s) is above $500 and below $2,000 *and* we are late by our promised ship date, you can cancel your order at a 10% cancellation fee of the remaining balance.

- If your order/or remaining backordered item(s) is above $2000 *and* we are late by our promised ship date, you can cancel your order at a 25% cancellation fee of the remaining balance.

# OEM CUSTOMER PRODUCTS

All custom OEM parts are Non-Cancellable Nonrefundable.

# ORDER CANCELLATION FORM

*After reading through our terms, please fill the cancellation form below:*

## Order Cancellation Form

We apologize for any delay or inconvenience you are experiencing. Please fill out and submit the form below. Please allow up to 4 business days for an ICM Representative to review your cancellation, and initiate a refund.

| FIRST NAME |
| --- |

| LAST NAME |
| --- |

| EMAIL |
| --- |

| COMPANY |
| --- |

| Full Order or Line(s) Cancellation: Are you canceling your entire order or specific line items? |
| --- |

| ACCOUNT# |
| --- |

ORDER# or PO#

ADDITIONAL INFO (2): Reason for return?

CAPTCHA

| ☐ I'm not a robot |
| reCAPTCHA |

Submit

# Find a distributor

Find a distributor nearby entering your location, to get a quote or more information about specfic products or services

ENTER YOUR ADDRESS

Find a distributor →

COPYRIGHT © 2021 — ICM CONTROLS          MADE IN USA

